O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LETICIA R., | Case No. 5:20-cv-01044 KES |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

## I.
## BACKGROUND

In September 2016, Leticia R. ("Plaintiff") applied for Title II disability insurance benefits alleging an onset date of September 1, 2014. Administrative Record ("AR") 287. On March 27, 2019, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, appeared and testified, along with a vocational expert ("VE"). AR 193–214. On April 10, 2019, the ALJ issued an unfavorable decision. AR 16–27.

The ALJ found that Plaintiff suffered from the severe impairments of obesity and degenerative joint disease affecting the cervical spine and "left upper extremity." AR 18. The ALJ determined that despite these impairments, Plaintiff

had the residual functional capacity ("RFC") to perform light work with additional limitations on postural activities and use of her left arm. AR 20. Based on this RFC and the VE's testimony, the ALJ found that Plaintiff could perform her past relevant work as an electronics inspector, a job rated "light" work by the Dictionary of Occupational Titles ("DOT"), as generally performed, but not as actually performed. AR 26. The ALJ concluded that Plaintiff was not disabled. AR 26–27.

## II.
## ISSUE PRESENTED

This appeal presents the sole issue of whether the ALJ erred in discounting Plaintiff's subjective symptom testimony. (Joint Stipulation ["JS"] Dkt. 20 at 4.)

## III.
## SUMMARY OF THE MEDICAL EVIDENCE

The medical evidence before the ALJ consisted of only six exhibits totaling 130 pages.[1] AR 350–479. They include treating records from (1) Vincent L. Gumbs, M.D., when he examined Plaintiff for her workers' compensation claim in 2014; (2) progress notes from medical sources at the San Antonio Medical Plaza from 2015–2017, including Plaintiff's primary care physician, Karin C. Li, M.D., and pain management specialist, Bryan X. Lee, M.D; (3) two appointment notes from Dr. Adelaida Bustos, M.D., who treated Plaintiff for diabetes and hypertension in March and April of 2018; and (4) notes from Nikan Khatibi, D.O., another pain management specialist whom Plaintiff visited once in May 2018. The medical evidence also includes a November 2016 consultative examination.

This evidence is summarized in chronological order, as follows:

---

[1] An additional 162 pages of medical evidence was submitted to the Appeals Council. AR 31–192. The Appeals Council found that most of these additional records postdated the ALJ's April 2019 decision and that the remainder would not have changed the outcome of the ALJ's decision. AR 2.

- In January and April 2014, Dr. Gumbs wrote a report and supplement for Plaintiff's workers' compensation claim. AR 363–65. The supplement reviews various MRIs and x-rays that showed "right carpal tunnel syndrome, mild," mild neuropathy affecting her right elbow, mild degenerative changes affecting her left wrist, and mild-to-moderate C5-C6 foraminal narrowing. AR 364.

- In August 2014 (i.e., just before Plaintiff's September 1, 2014 alleged disability onset date), Dr. Gumbs considered two job descriptions from Plaintiff's employer and determined that her impairments would not preclude her from performing one of the positions: Quality Inspector/Technician Lead. AR 372.

- On January 12, 2015, Plaintiff visited Dr. Li to discuss her diabetes. AR 398. Plaintiff noted that in the past, her diabetes was under control "because she was doing exercise," but she had stopped exercising due to foot pain. AR 398. There is no mention of neck, back, or arm pain. She denied "weakness of muscle or joints" or any "difficulty walking." AR 400.

- On April 9, 2015, Plaintiff visited Dr. Li to discuss cough and fever symptoms. AR 394. Dr. Li noted no musculoskeletal problems. AR 396. Dr. Li diagnosed acute tonsillitis. AR 396. Again, there is no mention of neck, back, or arm pain. AR 396; see also AR 447 (reporting "daily function: good" despite foot pain on March 12, 2015).

- On August 31, 2015, Plaintiff visited Dr. Li for a "general adult medical examination." AR 390. Plaintiff complained about symptoms of diabetes, but she did not complain about neck, back, or arm pain. AR 390. Dr. Li observed no musculoskeletal abnormalities. AR 392.

- On March 24, 2016, Plaintiff again visited Dr. Li. Plaintiff complained about a sore throat and runny nose, but she did not mention back, neck, or arm pain. AR 386. She had no prescriptions for pain medication other than a daily aspirin. AR 387. She specifically denied neck stiffness. AR 388; see also AR 437, 442 (complaining only of foot pain on 2/10/16 and 3/30/16).

    • On April 26, 2016, Plaintiff complained to Dr. Li about symptoms from her diabetes that was "improving, not controlled." AR 382. Dr. Li recommended a "better sleeping position" to address occasional numbness in her right arm. AR 384.

    • In November 2016, consultative examiner Vicente R. Bernabe, D.O., performed an orthopedic evaluation. AR 352–59. Plaintiff told Dr. Bernabe that she had developed neck, back, and left arm pain due to the repetitive nature of her prior work as an electronics inspector. AR 352. She had been "treated with physical therapy, chiropractic treatment and pain medications," but was "no longer receiving any treatment" beyond "occasionally tak[ing] pain medications." AR 352. She could walk and squat and displayed a normal range of motion in her spine, shoulders, elbows, wrists, and hands. AR 353–55. She also had a normal range of motion in her hips, knees, ankles, and feet. AR 355–57. Dr. Bernabe reviewed her prior MRIs and diagnosed her as suffering from degenerative disc disease of the cervical spine and osteoarthritis of the left thumb. AR 358. He found no restrictions on her ability to sit, stand, walk, crouch, kneel, or use her right arm; he restricted her left arm to "frequent" use. AR 358.

    • In December 2016, Plaintiff visited endocrinologist Freddie P. Dial, M.D. AR 432. He characterized her diabetes as out of control since early 2016. AR 432.

    • On March 22, 2017, Plaintiff visited Dr. Li for another physical. AR 378. She still had no prescriptions for pain medication other than a daily aspirin. AR 378. She did not complain of back, neck, or arm pain. She denied neck stiffness and exhibited a normal gait, despite complaining of heel pain. AR 380. Dr. Li concluded, "Patient healthy except for the mentioned problems." AR 380.

    • In April and June 2017, Plaintiff saw Dr. Lee for specialized pain management. AR 423, 428. Plaintiff complained only of pain affecting the soles of her feet. AR 423, 428. While she initially rated this foot pain at 9/10, after an injection, she rated it at 0/10. AR 423, 428.

- On September 14, 2017, Plaintiff returned to Dr. Li. AR 375. This time, she complained of chronic neck pain that was progressively getting worse. AR 375. She reported that it had previously improved with 800 mg ibuprofen. AR 375. She told Dr. Li that her last cervical MRI had been five years ago in 2012 and she preferred not to obtain another. AR 375. On examination, Dr. Li observed "cervical spine tenderness, but saw "otherwise joints with no abnormal swelling, redness, tenderness, or increased warmth, no gross deformities, gait normal." AR 376–77. Dr. Li recommended "heating pack, ice or stretches" to address her neck pain. AR 377.

- On October 11, 2017, Plaintiff saw Dr. Lee again complaining of neck pain radiating to her left shoulder which she rated at level 3–6/10. AR 418. Dr. Lee observed cervical tenderness upon palpation and prescribed pain medications. AR 419–20. Plaintiff also received a Toradol injection. AR 420.

- In November and December of 2017, Plaintiff told Dr. Lee that she still had foot and neck pain. AR 408, 413. Plaintiff reported no medication side effects. AR 409, 414. Dr. Lee observed that her foot pain was improving, but her cervical pain was not. AR 408–10, 414–15. He administered Toradol injections and prescribed or refilled medications. AR 410, 415.

- On January 10, 2018, Plaintiff returned to Dr. Lee. AR 403. Plaintiff again complained of pain affecting her neck and the soles of her feet. AR 403. Plaintiff reported that the injections had "provided good relief" for her foot pain. AR 403. Dr. Lee still noted no medical side effects. AR 404.

- In March and April 2018, Plaintiff visited Adelaida E. Bustos, M.D., for her hypertension and diabetes. AR 474–75. She reported that pain in her feet, neck, and upper back was already being treated by a specialist. AR 475.

- In May 2018, Plaintiff had an initial visit with Inland Pain Specialists. AR 477. After observing cervical tenderness, Nikan Khatibi, D.O., recommended conservative treatment consisting of over-the-counter pain creams and ice/heating

pads combined with exercise, including yoga, Zumba, walking, biking, and dancing.  AR 478.

## IV.

## DISCUSSION

**A.   Legal Standards.**

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited."  Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation omitted).  "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  Id. (citation omitted).  If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing."  Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

Effective March 27, 2017, the Commissioner amended the applicable regulations on how an ALJ should evaluate a claimant's subjective symptom statements.  20 C.F.R. §§ 404.1529, 416.929.  These regulations provide in part:

> In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you.  We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms

affect your ability to work. ... We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

Id. §§ 404.1529(a) & (c)(4), 416.929(a) & (c)(4); see Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *2, 2016 SSR LEXIS 4, at *1 (clarifying that "subjective symptom evaluation is not an examination of an individual's character"). Because the ALJ issued his decision in April 2019, these regulations apply to Plaintiff's case.

## B. Summary of Relevant Administrative Proceedings.

The ALJ summarized Plaintiff's hearing testimony. AR 20–21. Plaintiff testified that she was in pain "all the time" affecting her neck, arms, hands, and feet. AR 197, 199. She needed to lie down every hour for at least 15 minutes. AR 199–200. She could not go walking or dancing with friends due to foot pain. AR 208–09. She testified that she always carried lidocaine patches with her and "can't live without them anymore." AR 200. The longest she could stand, enduring pain, was 10–15 minutes. AR 208. She could not work with her right hand "too much" because of carpal tunnel syndrome. AR 203. She could not sit "too long" or her neck would lock. AR 209. She described a "big bump" on her left wrist that caused a doctor to diagnose her with trigger finger affecting her left thumb. AR 204. She declined additional cortisone injections because they were "very painful," although they made her thumb "okay for a period of time," and her doctor would

not recommend surgery. AR 204–05. Plaintiff affirmed that she suffered side effects from her medications, testifying, "they make my stomach upset all the time. So I'm always throwing up." AR 205. She was, however, able to drive on a nearly daily basis, and she traveled to Mexico with her husband in March 2018 for a six- or seven-day trip. AR 201, 209–10.

After repeating the two-step legal process, the ALJ found that Plaintiff's "statements about the alleged intensity, persistence, and limiting effects of [her] symptoms [were] inconsistent with and are not substantiated by the objective medical evidence." AR 20–21. The ALJ then summarized the medical evidence. AR 21–23. The ALJ noted objective evidence that was inconsistent with Plaintiff's subjective testimony. For example, while Plaintiff testified that she could not stand for more than 10 or 15 minutes (AR 208), the ALJ noted that Plaintiff's physical examination in March 2015 revealed only tenderness at the soles of her feet and the remainder of the physical examination was unremarkable, including normal limits, independent ambulation, normal muscle bulk, normal motor sensory findings in the bilateral upper and lower extremities. AR 21, citing AR 452.

Next, the ALJ discussed ways in which Plaintiff's testimony was inconsistent with her symptom reporting and treatment reflected in specific records. AR 23–24. First, the ALJ noted that "the degree of [Plaintiff's] subjective complaints is not comparable to the frequency or extent of medical treatment sought by [Plaintiff]." AR 23. The ALJ contrasted Plaintiff's testimony that she needed pain medication to function with treating records showing a gap in her pain management treatment between March 2016 and April 2017. AR 23. The ALJ also cited Plaintiff's statements to the consultative examiner that she was no longer receiving any treatment and only occasionally took pain medication. AR 23, citing AR 352.

The ALJ also noted that while Plaintiff claimed significant medication side effects at the hearing (i.e., "always throwing up" at AR 205), her treating records

failed to corroborate those allegations; there was no evidence that Plaintiff complained to any medical sources about medication side effects. AR 23.

C. **Analysis of Claimed Error.**

Plaintiff argues that the ALJ offered only a "general discussion of the medical evidence," with "insufficient issues for finding [Plaintiff's] testimony regarding her symptoms not consistent with the record." (JS at 8.) Plaintiff points out that ALJs may not discount subjective testimony solely because "it is not substantiated affirmatively by objective evidence." (Id. at 6, citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).) Plaintiff acknowledges that the ALJ discussed her "lack of treatment as a reason to reject her testimony," but argues that in doing so, the ALJ "impermissibly isolates the record and does not view it as a whole." (JS at 11.)

As discussed above, the ALJ gave at least two reasons in addition to lack of substantiating objective evidence: treatment gaps and inconsistent symptom reporting. AR 23; see Marsh v. Colvin, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015) (substantial evidence for discounting the claimant's subjective statements included "(1) that [claimant's] treatment was 'routine or conservative'; (2) that gaps existed in [claimant's] treatment regimen; [and] (3) that [claimant] did not take a type and dosage of medication consistent with the alleged severity of her impairments"). Regarding treatment gaps, there are no treating records from September–December 2014. From January 2015–April 2016, Plaintiff only complained of foot pain and generally visited her primary care doctor for some reason other than pain. AR 382, 386, 390, 394, 398. In November 2016, she told Dr. Bernabe that she was only occasionally taking over-the-counter pain medication. AR 352. By March 2017, she still complained only of foot pain and had no prescription pain medication. AR 378–80. Even when she visited a pain specialist in April and June 2017, she complained only of foot pain, and it was completely relieved, at least temporarily, with an injection. AR 423, 428. While Plaintiff's treating records from September

9

2017–May 2018 show complaints about foot and cervical spine pain, her foot pain was improving, and she had a normal gait. AR 376–77, 403, 408–10. Doctors recommended conservative treatment for her neck pain. AR 377, 478.

ALJs may consider such gaps when evaluating whether the claimant's pain is truly as limiting as alleged. See Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001) (finding claimant not credible where he "has not participated in any significant pain regimen or therapy program"); Roberts v. Berryhill, 734 F. App'x 489, 491 (9th Cir. 2018) ("unexplained gaps in treatment may support an ALJ's credibility determination"); Gilder v. Berryhill, 703 F. App'x 597, 598 (9th Cir. 2017) ("Gaps in medical treatment may be the basis for an adverse credibility finding unless a claimant fails to seek treatment because of inadequate funds ….") (citation omitted). In doing so, the ALJ was not impermissibly considering portions of the AR in isolation; the ALJ was identifying gaps, which necessarily are shown by comparing some portions of the AR to others. While the AR has evidence of neck pain complaints from September 2017–May 2018, the lack of such complaints earlier, let alone the lack of treatment during years when Plaintiff claimed to suffer from disabling neck pain, is sufficient to show an inconsistency between Plaintiff's course of treatment and her allegations.

Second, the ALJ cited Plaintiff's testimony that she was constantly experiencing an upset stomach and vomiting, and she attributed this to her pain medication. AR 23, citing AR 205. Yet the ALJ correctly pointed out that when Plaintiff was receiving specialized pain management treatment, she never told her doctors about this. AR 409, 414, 477–78. Plaintiff's inconsistent reporting of such a serious side effect provides another clear and convincing reason, supported by substantial evidence, for discounting her testimony. See 20 C.F.R. § 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence …."); Molina v. Astrue, 674 F.3d 1104, 1112 ("In

evaluating the claimant's testimony, … the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct ….").

## V.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner shall be AFFIRMED. Judgment shall be entered consistent with this order.

DATED: June 10, 2021

_____
KAREN E. SCOTT
United States Magistrate Judge